O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE FRANCISCO C., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security,[1] <br><br> Defendant. | Case No. 2:18-cv-09387-KES <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

Plaintiff Jose Francisco C. ("Plaintiff") applied for Supplemental Security Income ("SSI") benefits in September 2015 within days of his eighteenth birthday, alleging disability based on mental impairments that he has had since childhood. Administrative Record ("AR") 49, 489, 832. On September 12, 2017, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by an attorney, appeared and testified, as did a vocational expert

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

("VE"). AR 373-400. On October 25, 2017, the ALJ issued an unfavorable decision. AR 40-54. The ALJ found that Plaintiff suffered from the severe impairments of "autism, paranoid personality disorder, generalized anxiety disorder, and borderline intellectual functioning." AR 42. The ALJ concluded that despite his impairments, Plaintiff had a residual functional capacity ("RFC") to perform work at all exertional levels with the following non-exertional limitations:

> [H]e can understand, remember, and carry out simple job instructions; he can maintain attention and concentration to perform simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; he can have occasional interaction with coworkers, supervisors, and the general public; he can work in an environment with occasional changes to the work setting and occasional work-related decision-making.

AR 45.

Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could work as a cleaner II (Dictionary of Occupational Titles ["DOT"] 919.687-014), laundry laborer (DOT 361.687-018), and industrial cleaner (DOT 381.687-018) (collectively, the "Suitable Jobs"). AR 50 (citing AR 396). The ALJ concluded that Plaintiff was not disabled. Id.

## II.
## ISSUES PRESENTED

Issue One: Whether the ALJ erred by rejecting without legally sufficient reasons two opinions of State agency psychologist, Dr. Khaleeli: that Plaintiff was limited to (1) "simple and low-level detailed work activities" and (2) "superficial" interaction with coworkers.

Issue Two: Whether the ALJ gave legally sufficient reasons for discounting the psychological evaluation prepared by treating sources Jessica Acosta, M.A., and psychologist Krystel Edmonds-Biglow, Psy.D. (see AR 839-45).

Issue Three: Whether the district court "should remand for new and material evidence submitted to the Appeals Council and mangled in the record."

(Dkt. 21, Joint Stipulation ["JS"] at 4, 6-7, 13, 21.)

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the district court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate non-disability determination." Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

# IV.
# DISCUSSION

## A. ISSUE ONE: Dr. Khaleeli's Opinions.

### 1. Limitation to Simple Work.

#### a. The DOT's Definition of Simple Work.

A job's level of simplicity is addressed by its DOT general educational development ("GED") rating for reasoning development. The GED reasoning scale ranges from Level 1 (lowest) to Level 6 (highest). The DOT defines the reasoning abilities corresponding with the first two levels, as follows:

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

See DOT, App. C, 1991 WL 688702.

In Zavalin v. Colvin, 778 F.3d 842 (9th Cir. 2015), the Ninth Circuit held that a claimant limited to "simple, routine, or repetitive tasks" could presumptively not do work rated by the DOT as requiring reasoning Level 3 or higher. Id. at 847. The Ninth Circuit ruled, "In sum, because the ALJ failed to recognize an inconsistency [between simple work and Level 3], she did not ask the expert to explain why a person with Zavalin's limitation could nevertheless meet the demands of Level 3 Reasoning. We conclude that the ALJ erred in failing to reconcile this apparent conflict." Id. Following this same reasoning, in Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996 (9th Cir. 2015), the Ninth Circuit held that a claimant limited to "one or two-step tasks" could presumptively not do work rated by the DOT as requiring Level 2 reasoning. Id. at 1002-03.

b. Relevant Administrative Proceedings.

In February 2016, Dr. Jenaan Khaleeli considered Plaintiff's medical records and found that his impairments would not preclude all work. AR 409. She found, however, that Plaintiff's "concentration, persistence and pace, and adaptation are somewhat impacted and would cause moderate limitations in basic work-like duties." Id. She found Plaintiff "not significantly limited" at understanding "very short and simple" instructions but "moderately" limited in understanding "detailed" instructions. AR 411. She concluded that he was "capable of understanding and remembering simple and low level detailed instructions." Id. He was also capable of making "simple work-related decisions" and asking "simple" questions. AR 411-12. She concluded, "Claimant can adapt to low demand work setting consistent with simple work." AR 412.

The ALJ gave Dr. Khaleeli's assessment "significant" weight. AR 48. The ALJ limited Plaintiff to jobs with "simple job instructions" and "simple, routine, and repetitive tasks …." AR 45. Of the three Suitable Jobs, two require Level 2 reasoning while one (the laundry laborer job) requires Level 1 reasoning. AR 50.

c. Analysis of Claimed Error.

Plaintiff contends that (1) Dr. Khaleeli's opinion that he was limited to "simple and low level detailed instructions" constitutes a limitation to Level 1 reasoning (i.e., one- or two-step tasks), such that (2) the ALJ was required to give reasons for rejecting this opinion or limit Plaintiff to jobs requiring Level 1 reasoning. (JS at 6-7.) Plaintiff argues that Level 2 reasoning requires carrying out "detailed but uninvolved" instructions, and such instructions are more complex than "low level detailed instructions." (JS at 7.)

The premise of Plaintiff's argument fails. The ALJ reasonably interpreted Dr. Khaleeli's opinion as finding Plaintiff capable of simple work; Dr. Khaleeli said as much. AR 412. Indeed, by opining that Plaintiff could understand simple *and* detailed instructions (albeit only low-level detailed instructions), Dr. Khaleeli

5

was expressing that Plaintiff could do slightly more than simple work. Plaintiff has not shown legal error.

### 2. Limitation to Superficial Contact with Others.

#### a. Relevant Administrative Proceedings.

Dr. Khaleeli opined that Plaintiff had "mild" difficulties maintaining social functioning. AR 409. She noted his history of attending special education classes, obtaining job training at Payless Shoes, and displaying a cooperative attitude during mental status exams.[2] Id. She found that he had "no" limitations on social interactions. AR 412. She opined that Plaintiff was capable of responding "appropriately to supervisors, and of superficial interaction with coworkers." Id.

The ALJ limited Plaintiff to jobs that require only "occasional" interaction with coworkers, supervisors, and the general public. AR 45. In Social Security terminology, "occasional" means up to one-third of the workday. Social Security Ruling ("SSR") 83-10, 1983 SSR LEXIS 30, 1983 WL 31251 at *5.

#### b. Analysis of Claimed Error.

Plaintiff contends that Dr. Khaleeli's limitation to "superficial" interaction with coworkers was a qualitative opinion, not a quantitative opinion, that the ALJ failed to address adequately by limiting Plaintiff to "occasional" interaction with coworkers. (JS at 12.) Plaintiff argues that the ALJ erred by neither accepting Dr. Khaleeli's limitation nor giving a reason for rejecting it. (JS at 8.)

The ALJ reasonably translated Dr. Khaleeli's opinions about Plaintiff's social skills into an RFC by limiting Plaintiff to "occasional" interaction with coworkers. Human interactions that are infrequent are generally understood to be superficial, particularly at work. See, e.g., Shaibi v. Berryhill, 883 F.3d 1102, 1106-07 (9th Cir. 2017) (finding "no obvious inconsistency" where the plaintiff

---

[2] Plaintiff completed a two-month job-training program at Payless Shoes through his school. AR 833.

6

argued that the ALJ mistakenly gleaned from the doctor's "qualitative" limitation—that he could "relate to others on a superficial work basis"—a "quantitative" limitation that he was capable of "occasional" interaction with coworkers); Adams v. Colvin, 2013 U.S. Dist. LEXIS 183655, at *21 (N.D. Ohio Nov. 25, 2013) (finding no error where ALJ relied on VE's testimony equating limitation to "superficial" contact with "occasional" interaction).

### B. ISSUE TWO: The Acosta Evaluation.

#### 1. Summary of Relevant Administrative Proceedings.

In September 2016, psychological assistant Jessica Acosta, a staff member at the South Central Los Angeles Regional Center, prepared a psychological evaluation of Plaintiff signed by psychologist Dr. Krystel Edmonds-Biglow. AR 839-45 (the "Acosta Evaluation"). The Acosta Evaluation was prepared in response to a referral from Plaintiff's treating therapist. AR 839.

The Acosta Evaluation discusses Plaintiff's living situation, developmental history, education, and physical health. AR 840. It includes observations by Plaintiff's mother (AR 839) and of Plaintiff's behavior during visits to the regional center (AR 841-42). Ms. Acosta administered several tests to assess Plaintiff's cognitive functioning and explained the results. AR 842-44. The Acosta Evaluation concluded by listing diagnostic impressions and making recommendations for treatment. AR 844-45. For example, Ms. Acosta recommended that Plaintiff receive supportive services, opportunities to socialize with others his same age, and referrals to programs to assist him with job and independent living skills. AR 845.

The ALJ discussed this evaluation in a lengthy paragraph. AR 47. The ALJ did not assign it a particular weight or give reasons for "rejecting" any of its content. Id.

#### 2. Analysis of Claimed Error.

Plaintiff contends that the ALJ erred by failing to "summarize the extremely

low findings of functioning" the Acosta Evaluation. (JS at 15.) Plaintiff argues that the Acosta Evaluation contains opinions about Plaintiff's functional limitations, citing the treatment recommendations on its last page, such as that Plaintiff would benefit from supportive services in Spanish. (JS at 20, citing AR 845.) Plaintiff contends that the ALJ was required to state clear and convincing reasons for rejecting these opinions. (JS at 16, 20.)

The ALJ was not required to state clear and convincing reasons for "rejecting" the Acosta Evaluation, because (1) the ALJ did not reject this evaluation, but instead thoroughly discussed it and reached conclusions consistent with it; and (2) it does not appear to be a "medical opinion" requiring assignment of weight under 20 C.F.R. § 416.927(c), because it generally discusses clinical findings and Plaintiff's medical history for purposes of treatment. See 20 C.F.R. § 416.913(a)(2)-(3). Put differently, it does not set forth any medical opinions about Plaintiff's work-related functional limitations. In determining Plaintiff's RFC, the ALJ was not required, for example, to include or reject the opinion that Plaintiff would benefit from supportive services in Spanish.

Even in the ALJ erred in failing to specify the weight given to the Acosta Evaluation, however, this error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[I]n each case we look at the record as a whole to determine whether the error alters the outcome of the case."). The ALJ's RFC determination is generally consistent with the Acosta Evaluation.

The Acosta Evaluation found, for example, based on the reporting of Plaintiff's mother, that Plaintiff's communication abilities, ability to make independent choices, and ability to exhibit self-control are in the "Extremely Low Range." AR 843. It also determined that Plaintiff is "able to maintain brief reciprocal conversations, but due to fixations and being tangential, interactions were awkward." AR 842. It found that Plaintiff's "ability to solve problems and apply complex reasoning strategies" is better than 21% of his same-aged peers.

AR 843. Plaintiff has not shown how these findings are inconsistent with the ALJ's determination that Plaintiff can understand, remember, and carry out simple job instructions; can maintain attention and concentration to perform simple, routine tasks in a work environment; can have occasional interaction with coworkers; and can work in an environment with occasional changes to the work setting and occasional work-related decision-making. AR 45.

### C. ISSUE THREE: New Evidence.

#### 1. Rules Governing Remand to Consider New Evidence.

This Court bases its review on the evidence that was presented to the ALJ or accepted by the Appeals Council, which constitutes the "record as a whole." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012). While a claimant may present new evidence to the Appeals Council, the Council will consider it only if it meets certain criteria and the claimant shows "good cause" for not submitting it earlier. Id. As examples of "good cause" for failing to timely submit evidence that existed earlier, the regulations list illness, death of a family member, destruction of records in a disaster, or a treating source's refusal to provide records despite diligent efforts to obtain them. 20 C.F.R. §§ 404.970(b)(1)-(3), 404.935.

"[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes, 682 F.3d at 1163. In contrast, "where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence." Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011) (citing 20 C.F.R. § 404.970(b)).

Regardless of whether evidence was submitted to the Appeals Council, a district court "may at any time order additional evidence to be taken before the

Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). To demonstrate good cause, a claimant must show that the new evidence was unavailable earlier. Mayes v. Massanari, 276 F.3d 453, 463 (9th Cir. 2001) (quoting Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) ("If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied.")). Evidence is material only if there is a "reasonable possibility that the new evidence would have changed the outcome" if it had been before the ALJ. Id. at 462.

**2. Summary of Relevant Administrative Proceedings.**

At the hearing on September 12, 2017, the VE testified that a person with Plaintiff's RFC could do the Suitable Jobs. AR 396. On October 25, 2017, the ALJ published his decision relying on this vocational testimony. AR 50. In December 2017, Plaintiff sought review by the Appeals Council. AR 484-88. Plaintiff's counsel requested access to the electronic exhibit file and offered to submit a statement of issues and contentions within twenty-eight days of receipt of access. AR 484. On March 21, 2018, Plaintiff's counsel wrote a letter to the Appeals Council indicating that he had not yet received access to the electronic exhibit file. AR 481.

On May 23, 2018, Plaintiff's counsel faxed a letter brief to the Appeals Council with printouts of vocational information from the O*Net OnLine database about the Suitable Jobs. (Dkt. 21-1 [brief and printouts dated May 23, 2018]; Dkt. 21-2 [fax transmission report indicating nineteen pages sent on May 23, 2018, at 6:12 p.m.].) The printouts discuss what percentage of availing positions within the Suitable Jobs require different degrees of contact with others or working with a team. (JS at 21-22; Dkt. 21-1.)

In October 2018, the Appeals Council denied review. AR 1, 6. The Appeals Council made Plaintiff's request for review and related correspondence part of the record. AR 1, 5 (identifying those materials as Exhibit 13B, found at AR 481-88 per the AR Index). The Appeals Council also exhibited two pages of the May 23, 2018 fax (pages 17 and 18). AR 8-9. The Appeals Council decision does not discuss these two pages. AR 1-2. Consistent with the regulations, the Appeals Council advised that it only considers new, material evidence if the claimant shows "good cause" for not "informing us about or submitting it earlier." AR 2.

### 3. Analysis of Claimed Error.

Plaintiff argues that the Appeals Council was required to consider, but never considered, all nineteen pages of the May 23, 2018 fax. (JS at 23 ["The court should remand so that the Appeals Council can entertain the arguments made and consider the evidence presented."].) Plaintiff apparently reasons that the Appeals Council's inclusion of only two pages in the record indicates that it never considered the other seventeen pages.

The Commissioner responds that the Appeals Council had no duty to consider the fax, because Plaintiff failed to show good cause for submitting it so long after the hearing at which the VE identified the Suitable Jobs. (JS at 24-25.) Even if Plaintiff could show good cause, the Commissioner argues that the O*Net information is immaterial, because the ALJ was entitled to rely on the VE's testimony. (JS at 25.)

#### a. Lack of Good Cause.

Accepting that the O*Net information was faxed to the Appeals Council in May 2018, Plaintiff has failed to show good cause for submitting it so late. The hearing took place in September 2017, during which Plaintiff's counsel could have looked up the Suitable Jobs on O*Net using a laptop and asked the VE about the degree of social interaction required to perform those jobs. Since this information was always available online, Plaintiff's counsel has failed to show why it was not

provided at least before the ALJ's final decision in October 2017.  Plaintiff's counsel did not need access to the electronic exhibit file to produce this rebuttal vocational evidence.  Because Plaintiff has failed to show good cause for the delay, the Court need not address the evidence's materiality.

### b. Substantial Evidence.

Even considering AR 8-9, the ALJ's finding that Plaintiff can do the Suitable Jobs is supported by substantial evidence, and/or any error in the finding is harmless.  Those pages concern the occupation of industrial cleaner, DOT 381.687-018.  (JS at 22.)  Per O*Net, 22% of jobs require only "occasional" or "no" contact with others.  AR 8.  The ALJ found that 216,000 industrial cleaner jobs are available nationally.  Even reducing that number by 78%, 47,520 jobs would still be a significant number of jobs.  See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 527-29 (9th Cir. 2014) (finding 25,000 jobs nationally satisfies legal standard).

Plaintiff also argues that this evidence undermines the VE's testimony that working as an industrial cleaner requires only "occasional" contact with coworkers, supervisors, and the general public, because according to O*Net, working "with others in a group or team" has some degree of importance in 94% of jobs.  (JS at 22, citing AR 8.)  It is unclear, however, that a job in which teamwork is "fairly important" would require more than "occasional" interaction with others.  Plaintiff provides no explanation as to why the O*Net data should be treated as more authoritative than the DOT, which indicates that "talking" is not required to work as an industrial cleaner.  See DOT 381.687-018 (talking "not present").  The kinds of tasks included in the DOT's job description (e.g., transporting supplies, arranging boxes, cleaning equipment, scrubbing floors, and disposing of waste) are tasks that common experience suggests can be done without more than "occasional" social interaction.

# V.
# CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED: August 16, 2019

_____
KAREN E. SCOTT
United States Magistrate Judge